IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOSPITALITY SUPPORTIVE SYSTEMS, LLC <br> 920 W. Sproul Road, Suite 201 <br> Springfield, PA 19064 <br><br>     and <br><br> EDWARD SNOW <br> 920 W. Sproul Road, Suite 201 <br> Springfield, PA 19064 <br><br>          Plaintiffs, <br><br>     v. <br><br> AIG SPECIALITY INSURANCE COMPANY <br> 17200 West 119th Street, #550 <br> Olathe, KS 66061 <br><br>     and <br><br> HUB INTERNATIONAL MIDWEST LIMITED <br> 10368 West State Road 84, Suite 201 <br> Davie, FL 33324 <br><br>          Defendants. | CIVIL ACTION <br><br> NO. |

## COMPLAINT

Plaintiffs Hospitality Supportive Systems, LLC ("HSS") and Edward Snow ("Snow"), by their undersigned attorneys, file this Complaint against defendants AIG Specialty Insurance Company ("AIG") and HUB International Midwest Limited ("HUB"), arising from AIG's refusal to defend and indemnify HSS and Snow in pending litigation, HUB's corresponding negligence and contractual breaches, and AIG's bad faith conduct in relation thereto.

## **PARTIES**

1.    Plaintiff HSS is a limited liability company organized under the laws of the

Commonwealth of Pennsylvania, with a principal place of business located at 920 W. Sproul Road, Suite 201, Springfield, PA 19064.

2.     HSS is a property and casualty insurance broker which is domiciled in the Commonwealth of Pennsylvania and duly licensed and registered as a non-resident broker outside of Pennsylvania.

3.     Plaintiff Edward Snow is an adult individual residing in the Commonwealth of Pennsylvania with an address conducting business at 920 W. Sproul Road, Suite 201, Springfield, PA 19064.

4.     Snow is the sole member of HSS.

5.     Defendant AIG, upon information and belief, is a surplus lines insurer, domiciled in the state of Illinois with a place of business at 17200 West 119th Street, #550, Olathe, KS 66061.

6.     Defendant HUB, upon information and belief, is an insurance brokerage firm domiciled in the state of Illinois with a place of business at 10368 West State Road 84, Suite 201, Davie, FL 33324.

7.     HUB is an appointed insurance broker and producer for AIG.

<u>JURISDICTION AND VENUE</u>

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, in that the plaintiffs are all citizens of the Commonwealth of Pennsylvania, the defendants are citizens of states other than the Commonwealth of Pennsylvania, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this district pursuant to 28 U.S.C. §1391, in that a substantial part of the events giving rise to this action occurred in this district.

10.    This Court has personal jurisdiction over AIG and HUB in that they routinely and

systematically issue insurance policies to, and transact business with, residents of Pennsylvania, and did so with respect to HSS and Snow in the relevant time period.

11.     The Court has the power to grant the declaratory relief sought herein pursuant to 28 U.S.C. §§2201 and 2202.

## FACTS

### AIG Policy No. 01-826-03-76

12.     On or about September 15, 2016, AIG, through HUB, issued to Patriot National, Inc. ("Patriot"), as the primary named insured, a professional liability policy bearing policy number 01-826-03-76 with an initial policy period of September 15, 2016 to September 15, 2017 (the "2016 Policy").

13.     HSS is named as an additional insured under the 2016 Policy.

14.     AIG issued the 2016 Policy at the request of HUB as the broker.

15.     Although the 2016 Policy names HSS as additional insured, neither AIG, HUB nor Patriot sent a copy of the policy to HSS.  A copy of the 2016 Policy was not obtained by Plaintiffs until January of 2018 after the Aspen Action (as hereinafter defined) was commenced.

16.     A true and correct copy the 2016 Policy, along with all endorsements, is attached hereto, made a part hereof and marked Exhibit "A."

17.     As defined in Endorsement 7 to the 2016 Policy, "Insured" means:

> [T]he individual, partnership, corporation or other entity named in Item 1 of the Declarations and shall include any past, present or future partner, director, officer or employee thereof solely while acting within the scope of his, her or its duties as such.

18.     Snow is the sole member of HSS and, therefore, a covered Insured under the 2016 Policy.

19.     Endorsement #19 to the 2016 Policy explicitly modifies the definition of Insured to

include HSS for all "Wrongful Acts" committed after December 9, 2011 and February 1, 2012, respectively.  (See Exh. A at definition of Insured)

20.     Endorsement #25 to the 2016 Policy defines "Wrongful Acts" as, *inter alia*, including any actual or alleged act, error or omission. (See Exh. A at Endorsement #25)

21.     Endorsement #15 to the 2016 Policy provides an extended reporting period of one year preset and two or three years to be determined. (See Exh. A at Endorsement #15)

22.     The Basic Reporting Period of the 2016 Policy, originally scheduled to end on September 15, 2017, was extended for three years through a Supplemental Reporting Period Endorsement.

23.     The Policy covers, in whole or in part, the Aspen Action and the Endurance Action, as hereinafter defined.

### AIG Policy No. 02-267-01-79

24.     On or about September 15, 2017, AIG, through HUB, issued to Patriot, as the primary named insured, a professional liability policy bearing policy number 02-267-01-79 with an initial policy period of September 15, 2017 to September 15, 2018 (the "2017 Policy").

25.     HSS was named as an additional insured under the 2017 Policy.

26.     AIG issued the 2017 Policy at the request of HUB as the broker.

27.     Although the 2017 Policy names HSS as an additional insured, neither AIG, HUB nor Patriot sent a copy of the policy to HSS.  A copy of the 2017 Policy was not obtained by Plaintiffs until January of 2018 after the Aspen and Endurance Actions (as hereinafter defined) were commenced.

28.     A true and correct copy the 2017 Policy, along with all endorsements, is attached hereto, made a part hereof and marked Exhibit "B."

29.     As defined in Endorsement 7 to the 2017 Policy, "Insured" means:

> [T]he individual, partnership, corporation or other entity named in
> Item 1 of the Declarations and shall include any past, present or
> future partner, director, officer or employee thereof solely while
> acting within the scope of his, her or its duties as such.

30.     Snow is the sole member of HSS and a covered Insured under the 2017 Policy.

31.     Endorsement #19 to the 2017 Policy explicitly modifies the definition of Insured to include HSS for all "Wrongful Acts" committed after December 9, 2011 and February 1, 2012, respectively.

32.     Endorsement #25 to the 2017 Policy defines "Wrongful Acts" as, *inter alia*, including any actual or alleged act, error or omission.

33.     Endorsement #15 to the 2017 Policy provides an extended reporting period of one year preset and two or three years to be determined.

34.     The Basic Reporting Period of the 2016 Policy, originally scheduled to end on September 15, 2017, was extended for three years through a Supplemental Reporting Period Endorsement.

35.     The Policy covers, in whole or in part, the Aspen and Endurance Actions (as hereinafter defined).

<u>AIG Excess Policy No. Unknown</u>

36.     Upon information and belief, AIG, through HUB, also issued an excess policy naming Patriot as the primary named insured and HSS as an additional insured (the "Excess Policy").

37.     AIG and HUB have failed and/or refused to send HSS a copy of the Excess Policy and to acknowledge coverage thereunder.

38.     Plaintiffs believe, and therefore aver, that the Excess Policy covers the Aspen and

Endurance Actions (as hereinafter defined), in whole or in part.

39.     The 2016 Policy, the 2017 Policy and the Excess Policy are collectively referred to herein as the "AIG Policies."

<u>The Aspen Action</u>

40.     HSS is named as a defendant in a lawsuit filed against it by Aspen Specialty Insurance Company ("Aspen") on or about March 17, 2016, which lawsuit is currently pending in federal court in the matter captioned *Aspen Specialty Insurance Company v. Hospitality Supportive Systems, LLC*, docket No. 16-cv-1133 (JD) (the "Aspen Action").

41.     On or about February 10, 2017, Aspen filed an Amended Complaint naming Snow, in addition to HSS and others, as a defendant (the "Aspen Amended Complaint").

42.     Aspen asserted numerous claims in the Aspen Amended Complaint against HSS and Snow for errors and omissions that clearly fell within the scope of the AIG Policies.

43.     A true and correct copy of the Aspen Amended Complaint in the Aspen Action is attached hereto as Exhibit "C."

44.     Aspen's suit seeks rescission, declaratory relief and damages arising, *inter alia*, out of the alleged conduct of HSS and Snow.

45.     Although portions of the Aspen Amended Complaint contain meritless allegations of fraudulent action on the part of HSS, other portions of the Complaint allege Wrongful Acts in the form of *unintentional* omissions, negligent acts, and failures to disclose and failure to adhere to contractual requirements.

46.     The foregoing allegations, and others set forth in the Aspen Amended Complaint, must be liberally construed in favor of HSS and Snow, as AIG's insureds.

47.     Under Pennsylvania law, when an insured such as HSS or Snow tenders multiple

6

claims to an insurer such as AIG for defense, the insurer is obligated to undertake defense of the entire suit where, as here, at least one claim is potentially covered by the policy.

48.     HSS has answered the Aspen Amended Complaint, denying the allegations of negligence, Wrongful Acts, contractual breaches and misrepresentations and omissions, and has asserted counterclaims in response thereto.  The allegations in the Aspen Amended Complaint and HSS's counterclaim are inextricable intertwined.  As such, HSS's counsel fees and costs, incurred and to be incurred, with respect to all these claims and counterclaims are covered under the AIG Policies.

49.     Snow filed a Motion to Dismiss the Aspen Amended Complaint which was denied without prejudice by Order entered August 20, 2018.

<u>The Endurance Action</u>

50.     HSS is named as a defendant in a lawsuit filed against it by Endurance American Specialty Insurance Company ("Endurance") in New York state court on or about April 5, 2017. The state court action was then removed to the United States District Court for the Southern District of New York and ultimately transferred to the United States District Court for the Eastern District of Pennsylvania where it is currently pending, captioned *Endurance American Specialty Insurance Company v. Hospitality Supportive Systems, LLC*, docket No. 17-cv-3983 (RK) (the "Endurance Action").

51.     While HSS currently is the only named defendant in the Endurance Action, there is a possibility that Endurance may amend its complaint to add additional claims against Snow. This allegation is based on the fact the complaint filed in the Endurance Action is, in some respects, a "copy-cat" pleading of the allegations made in the Aspen Action.

52.     Endurance asserted numerous claims in the Endurance Action against HSS for

errors and omissions that clearly fall within the scope of the AIG Policies.

53.     A true and correct copy of the complaint filed in the Endurance Action is attached hereto as Exhibit "D."

54.     Endurance's suit seeks rescission, declaratory relief and damages arising out of HSS's alleged conduct.

55.     Although portions of the complaint filed in the Endurance Action contain meritless allegations of fraudulent action on the part of HSS, other portions of the Complaint allege Wrongful Acts in the form of *unintentional* omissions, negligent acts and failures to disclose and failure to adhere to contractual requirements.

56.     The foregoing allegations, and others set forth in the complaint filed in the Endurance Action, must be liberally construed in favor of HSS, as AIG's insured.

57.     An exclusion for dishonesty and fraudulent statements, where other exclusions relate to "claims" and "suits" for punitive damages, for example, indicates that the dishonesty exclusion applies only where there has been a finding of such dishonesty.

58.     Under Pennsylvania law, when an insured such as HSS tenders multiple claims to an insurer such as AIG for defense, the insurer is obligated to undertake defense of the entire suit where, as here, at least one claim is potentially covered by the policy.

59.     HSS has answered the complaint filed in the Endurance Action, denying the allegations of negligence, contractual breaches and misrepresentations, and asserted counterclaims in response thereto.  HSS filed counterclaims against Endurance for breach of contract, declaratory judgment and bad faith.   The allegations in Endurance's suit and HSS's counterclaim are inextricable intertwined.  As such, HSS's counsel fees and costs, incurred and to be incurred, with respect to all of these claims and counterclaims are covered under the AIG Policies.

60.     Upon information and belief, on or about October 31, 2017, without having shared a copy of any of the AIG Policies with HSS or Snow, Patriot notified AIG of the Aspen and Endurance Actions.

61.     On or about November 16, 2017, by letter from Natalie Rockwell ("Rockwell") of AIG, AIG acknowledged it first received notice of the claims on October 31, 2017.  A true and correct copy of the November 16, 2017 letter is attached hereto as Exhibit "E."

62.     On or about December 11, 2017, plaintiffs obtained a copy of the November 16, 2017, letter from Rockwell, but still had not been provided with a copy of the AIG Policies.

63.     On or about February 8, 2018, counsel for Plaintiffs wrote to AIG providing supplemental notice of the Aspen Action and the Endurance Action, as to which AIG had already been notified.  A true and correct copy of the February 8, 2018 notice letters are attached hereto as Exhibit "F" and Exhibit "G."

64.     On or about May 8, 2018, counsel for Plaintiffs again wrote to AIG and HUB with regard to the notice of claim and request for defense and requested copies of the AIG Policies. A true and correct copy of the May 8, 2018 letter is attached hereto as Exhibit "H."

65.     On or about January 19, 2018, over two months after receiving and acknowledging notice of the Aspen Action and the Endurance Action, Rockwell wrote again on behalf of AIG in connection with the Endurance Action and denied having received the October 31, 2017 notice from Patriot and taking the position that its first notice of the Endurance Action was not received until November 15, 2017.  A true and correct copy of the Rockwell letter dated January 19, 2018 is attached hereto as Exhibit "I."

66.     On or about March 27, 2018, by letters from Mark Silverstein ("Silverstein") of AIG, AIG again denied ever having received the October 31, 2017 notice or acknowledged

Rockwell's November 16, 2017 letter, taking the position that it first received notice of the Aspen Action and the Endurance Action on December 18, 2017 by Patriot and February 8, 2018 by HSS. A true and correct copy of the Silverstein letters dated March 27, 2018 are attached hereto as Exhibits "J" and "K."

67.     On or about May 29, 2018, even though Rockwell authored two prior letters relating to the Aspen Action and the Endurance Action, Rockwell took the position that she was not the appropriate person to whom correspondence regarding these claims should be directed.

68.     Rather than dispute Rockwell's May 29, 2018 letter, on or about June 1, 2018 plaintiffs sent yet another letter to AIG and HUB.  True and correct copies of the June 1, 2018 letters are attached hereto as Exhibits "L" and Exhibit "M."

69.     AIG disclaimed coverage on the fabricated pretext that it did not received timely notice of the Aspen Action and the Endurance Action.

70.     In the event it is determined that Plaintiffs did not give timely notice under the aforementioned policies, the failure to give timely notice was caused by the actions and/or omissions of AIG and/or HUB.

## COUNT I – BREACH OF CONTRACT (against AIG)

71.     Plaintiffs hereby incorporate by reference the foregoing averments as if fully set forth herein at length.

72.     HSS and Snow are insureds under the AIG Policies against claims or suits of the type asserted by Aspen and Endurance.

73.     Under the AIG Policies, AIG has a contractual duty to indemnify HSS and Snow for damages that are covered under the AIG Policies, and an independent duty to cover the defense costs incurred, and to be incurred, in defense of the Aspen and Endurance Actions.

74.     HSS gave timely notice of the Aspen and Endurance Actions.

75.     AIG, in breach of its duties and obligations under the AIG Policies, has refused plaintiff HSS's demand for defense and indemnification.

76.     The excuses proffered by AIG for its denial of coverage are without merit.

77.     AIG's decision to deny coverage breached its contractual obligations to HSS and Snow under the AIG Policies.

78.     As a proximate result of that breach, HSS and Snow has been injured in an amount exceeding the diversity threshold of $75,000 and the arbitration threshold of $150,000.

WHEREFORE, plaintiffs HSS and Snow demand judgment in their favor and against AIG for compensatory damages in excess of $150,000, together with pre- and post-judgment interest, attorneys' fees and costs of suit.

## COUNT II – NEGLIGENCE (against HUB)

79.     Plaintiffs hereby incorporate by reference the foregoing averments as if fully set forth herein at length.

80.     At all times pertinent hereto, HUB owed a duty to HSS and Snow to exercise reasonable care in its dealings with them.  That duty included, without limitation:

a.     a duty to keep them reasonably informed regarding the issuance of policies naming HSS as additional insured, to deliver copies of such policies to them and to inform them of the terms of such coverage; and

b.     a duty to facilitate timely notice of claims on their behalf, identifying which policies applied to such claims.

81.     Through the acts and omissions averred above, HUB breached those duties.

82.     In the course of its business, HUB supplied inaccurate information for the guidance

11

of others, without exercising reasonable care or competence in obtaining and/or communicating that information.   Under section 552 of the Restatement (Second) of Torts, HUB is liable to plaintiffs for their justifiable reliance on information communicated to or withheld from Patriot and its subsidiaries.

83.     As a direct and proximate result thereof, plaintiffs have been damaged thereby.

WHEREFORE, plaintiffs HSS and Snow demand judgment in their favor and against HUB for compensatory damages in excess of $150,000, together with pre- and post-judgment interest, attorneys' fees and costs of suit.

## COUNT III – BREACH OF CONTRACT / THIRD PARTY BENEFICIARY
### (against AIG and HUB)

84.     Plaintiffs hereby incorporate by reference the foregoing averments as if fully set forth herein at length.

85.     At all times pertinent hereto, AIG and HUB owed contractual duties to Patriot and its subsidiaries to exercise reasonable care in their dealings with them.  Those duties included:

a.     a duty to keep them and their additional insureds reasonably informed regarding the issuance of policies, to deliver copies of such policies to them and to inform them of the terms of such coverage; and

b.     a duty to facilitate timely notice of claims on their behalf, and on behalf of the additional insureds, identifying which policies applied to such claims.

86.     HSS and Snow were known third party beneficiaries of those contractual undertakings.

87.     Through the acts and omissions averred above, AIG and HUB breached those duties.

88.     As a direct and proximate result thereof, plaintiffs have been damaged thereby.

12

WHEREFORE, plaintiffs HSS and Snow demand judgment in their favor and against AIG and HUB, jointly and severally, for compensatory damages in excess of $150,000, together with pre- and post-judgment interest, attorneys' fees and costs of suit.

## COUNT IV – BREACH OF FIDUCIARY DUTY (against AIG)

89.     Plaintiffs hereby incorporate by reference the foregoing averments as if fully set forth herein at length.

90.     AIG at all times pertinent hereto owed a fiduciary duty of utmost care to Patriot and its subsidiaries and additional insureds.

91.     AIG breached that duty when it:

    a.      failed to keep Patriot, its subsidiaries and its additional insureds reasonably informed regarding the issuance of policies, to deliver copies of such policies to them and to inform them of the terms of such coverage; and

    b.      failed to facilitate timely notice of claims on their behalf, and on behalf of the additional insureds, identifying which policies applied to such claims.

92.     At all pertinent times, AIG knew or should have known that any breach of duty owed to Patriot and its subsidiaries would cause a corresponding harm to its additional insured.

93.     Through the acts and omissions averred above, AIG and HUB breached those duties.

94.     As a direct and proximate result thereof, plaintiffs have been damaged thereby.

WHEREFORE, plaintiffs HSS and Snow demand judgment in their favor and against AIG and HUB, jointly and severally, for compensatory damages in excess of $150,000, together with pre- and post-judgment interest, attorneys' fees and costs of suit.

## COUNT V – BAD FAITH 42 PA.C.S. §8371, ET SEQ.
### (against AIG)

95.     Plaintiffs incorporate by reference the foregoing averments as if fully set forth herein at length.

96.     As its insurer, AIG owed HSS and Snow common law and statutory duties to defend and indemnify HSS and Snow against liability in the Aspen and Endurance Actions and to act reasonably and in good faith at all times.

97.     AIG, in bad faith, breached these duties as more fully set forth above.

98.     AIG lacked a reasonable basis for denying coverage and knew and/or recklessly disregarded its lack of reasonable basis for denying coverage.

99.     AIG's pretextual reasons for denying coverage were frivolous and unfounded.

100.    Although not a basis for a private right of action, Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 Pa.C.S. §§1171.1 et seq., is deemed to be incorporated into the AIG Policies.  AIG has violated that statute, as well implementing Unfair Claims Settlement Practices regulations, in a manner which provides further evidence of its bad faith conduct.

101.    In violation of the UIPA and its implementing regulations, AIG has engaged in the following acts and omissions with such frequency as to indicate a business practice:

a.      the misrepresentation of "pertinent facts or policy or contract provisions relating to coverages at issue … " 40 Pa.C.S. §1171.5(a)(10)(i);

b.      the failure "to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies…"    40 Pa.C.S. §1171.5(a)(10)(ii);

c.      the failure "to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies…"  40 Pa.C.S. §1171.5(a)(10)(iii);

d.      the refusal "to pay claims without conducting a reasonable investigation based upon all available information…"  40 Pa.C.S. §1171.5(a)(10)(iv);

e.      the failure "to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed and communicated to the company or its representative…"  40 Pa.C.S. §1171.5(a)(10)(v);

f.      the failure "to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim…"  40 Pa.C.S. §1171.5(a)(10)(xiv); and

g.      other provisions not specifically enumerated herein.

102.      Pennsylvania regulations likewise require prompt response to communications (31 Pa.Code. §146.5), prompt investigation of claims (id. at §146.6) and prompt communication of the acceptance or denial of a claim.  (Id. at §146.7(a))

103.      AIG's foregoing acts and omissions violated the UIPA as aforesaid.

104.      Pursuant to 42 Pa.C.S.A. §8371, in an action arising under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take all of the following actions:

a.      award interest on the amount of the Claim from the date the Claim was made by the insured in an amount equal to the prime rate of interest plus three (3) percent;

b.      award punitive damages against the insurer; and

c.      assess court costs and attorneys' fees against the insurer.

105.      As a proximate result of AIG's conduct, HSS and Snow have been injured and are entitled to relief.

106.      AIG's bad faith conduct subjects it to liability for all of the damages recoverable

15

under 42 Pa. C.S.A. §8371, and/or at common law or otherwise, including, but not limited to, compensatory and punitive damages, costs and attorneys' fees.

WHEREFORE, plaintiff HSS, SRM and Snow demands judgment in its favor and against AIG, together with compensatory damages, punitive damages, attorneys' fees, pre- and post-judgment interest and costs of suit.

## COUNT VI – DECLARATORY JUDGMENT

107.    Plaintiffs incorporate by reference the foregoing averments as if fully set forth herein at length.

108.    For the reasons set forth above, HSS and Snow are entitled to coverage under the AIG Policies in defense of the Aspen Action and Endurance Action.

109.    An actual controversy within the Court's jurisdiction exists between the parties concerning their respective rights and obligations under the AIG Policies.

110.    HSS and Snow are entitled to a declaration of the rights and obligations of the parties under the AIG Policies.

WHEREFORE, HSS and Snow pray that the Court enter judgment in their favor and against AIG, and declare:

1)    AIG is obligated to defend and indemnify HSS and Snow in the Aspen Action, and to reimburse them for counsel fees and costs incurred therein; and

2)    AIG is obligated to defend and indemnify HSS in the Endurance Action, and to reimburse it for counsel fees and costs incurred therein; and

3)    AIG is obligated to reimburse HSS and Snow for counsel fees and costs incurred in bringing this coverage litigation, together with such other and further relief which the Court deems fair, just and equitable.

WEIR & PARTNERS LLP

By: _____
Walter Weir Jr., Esquire
Marc J. Zucker, Esquire
Suite 500, The Widener Building
1339 Chestnut Street
Philadelphia, PA  19107
(215) 241-7751
Fax: (215) 665-8464
wweir@weirpartners.com
mzucker@weirpartners.com

*Attorneys for Plaintiffs*

Dated:  September 5, 2018